**NOT FOR PUBLICATION**                                      **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELIZABETH WHITAKER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 04-1100 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| Defendant, | : | |

Appearances:

Patricia M. Franklin
81 Halsey Street
P.O. Box 32207
Newark, NJ 07102
(973) 642-4206
        Attorney for Plaintiff

Christopher J. Christie
United States Attorney
Marla Piazza-Siegel
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
        Attorney for Defendant

PISANO, District Judge:

Before the Court is Elizabeth Whitaker's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument.  *See* Fed. R. Civ. P. 78.

## I.  Background

Plaintiff was born on May 31, 1947 and has a high school diploma.  She worked as a secretary at Montclair State College from 1995 until 2000.  Plaintiff asserts that she has been disabled since November 3, 2000.

### A.  Procedural History

On May 31, 2001, Plaintiff filed applications for DIB and SSI, alleging an inability to work effective November 3, 2000 due to quadruple bypass, vertigo, bursitis of the shoulders, carpal tunnel syndrome, diabetes, and arthritis of the knees[1].  The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration.  Plaintiff filed a timely request for hearing, which was held on October 17, 2002 in Newark, New Jersey.  Following the hearing, Administrative Law Judge ("ALJ") Richard L. DeSteno denied Plaintiff's claim in a decision dated November 13, 2002.  Plaintiff filed a Request for Review with the SSA on December 30, 2002.  In an action dated January 13, 2004, the SSA's Appeals Council denied Plaintiff's request.  Upon that denial, the ALJ's ruling became the SSA Commissioner's final

---

[1]While Plaintiff's brief indicates that Plaintiff also alleges poor balance, the record does not support such a claim.

decision.  Plaintiff filed this action challenging the final decision on March 9, 2004.

**B.  Factual History**

      **1.  Plaintiff's Employment Prior to November 3, 2000**

In the October 17, 2002 hearing held before the ALJ, Plaintiff testified that between 1987 and 1991 she worked in the public safety department at the New Jersey Institute of Technology. Her duties included maintaining the payroll and other secretarial tasks, which required her to sit at a desk all day typing.  She did not engage in any significant or heavy lifting.

Plaintiff testified that she worked at Montclair State College from 1995 until 2000. Initially, she worked as a secretary in the Office of the Dean of Students.  That position required her to sit at a desk all day typing correspondence and reports on a computer.  Plaintiff was transferred to the Student Activities Department at Montclair State College in 1999, for which she posted notices, put them in mailboxes, and ran errands around campus.  That job required her to be on her feet most of the day, but did not require any significant lifting.  Subsequently, Plaintiff was given the title of secretary-photographer within the Student Activities Department. In that capacity, up until the date of her asserted disability, she photographed students and staff of the college for identification pictures.  This job required her to be on her feet and also to lift and carry under ten pounds.

      **2.  Plaintiff's Medical History**

The record indicates that Plaintiff has a history of treatment for various ailments prior to her alleged disability onset date of November 3, 2000.

First, Plaintiff underwent surgery for carpal tunnel syndrome on her left hand in June of 1999.  In a progress note following the surgery, Dr. Irving Strauchler, M.D., commented that

3

Plaintiff's hand exhibited increasing grip strength.  The physician advised her to return to work but instructed her to take five minute breaks every half hour to rest her hand.  In an August 18, 1999 note, Dr. Strauchler stated that he advised Plaintiff to continue her work-related activities and to wear an elastic glove on her hand as needed.  The final progress note, dated October 13, 1999, stated that examination of her hand revealed a good range of motion and no tenderness over the scar, but observed persistent numbness in that hand.  That progress note also stated that Plaintiff had an acceptable recovery and was discharged.  A December 29, 1999 Magnetic Resonance Imaging Test ("MRI") of Plaintiff's left hand produced "unremarkable" results.

Finally, a medical report by Dr. Maria Vastesaeger, M.D., dated September 13, 2001, confirms persistent numbness in Plaintiff's left hand with "intermittent pain and weakness of left grip."  The same physician also notes that, while Plaintiff experienced minimal pain in her right hand, she had no numbness in and retained use of that hand.

On November 9, 2000, Plaintiff presented to Columbus Hospital with acute bronchitis, insulin dependent diabetes mellitus, and ischemia (blockage of blood flow to the heart).  She was treated and discharged.  Upon recommendation by the hospital, Plaintiff saw Dr. Irwin Goldfarb, M.D., a cardiologist, who diagnosed her with possible coronary artery disease and insulin-dependent diabetes mellitus.[2]  Dr. Goldfarb prescribed her with a beta blocker, Toprol 50 mg. O.D., and aspirin.

On December 3, 2000, Plaintiff presented to the emergency room at St. Michael's

---

[2] Dr.Goldfarb's medical records partially indicate that he first examined Plaintiff in January of 2001; however, such records also suggest that he first examined her prior to her December 2000 quadruple bypass surgery.  This factual discrepancy is not material to the issue presented.

4

Hospital in Newark, New Jersey with acute chest pain.  She underwent an EKG which showed T wave inversions with anterolateral leads (indicator of ischemia).  A cardiac catheterization revealed severe left main disease (coronary artery disease), multi-vessel coronary disease, and a normal ejection fraction (measurement of heart's efficiency).  An echocardiogram returned normal results.

On December 6, 2000, plaintiff underwent an elective quadruple coronary artery bypass surgery without any complications.  Dr. Barry Esrig, M.D., the cardiothoracic surgeon who performed Plaintiff's quadruple coronary artery bypass surgery, diagnosed her with coronary artery disease.  However, Dr. Esrig was unable to evaluate the status of her condition because she did not return for follow-up visits.

In a June 15, 2001 report for the Division of Disability Services by Dr. Goldfarb, the physician notes that his final examination of Plaintiff on May 23, 2001 revealed that her angina and superficial chest pain had recurred, despite medical therapy.  Finally, a medical report by consultative physician Dr. Maria Vastesaeger states that, except for local soreness around the sternal scar which responded to Advil, her chest pains had stopped since the quadruple bypass surgery.  The physician also noted that Plaintiff experienced shortness of breath when she walked two blocks or climbed two flights of stairs.

Plaintiff also has a history of medical problems resulting from "frozen shoulder." Medical records from Dr. Ronald C. Reese, dated November 23, 1999, show that an MRI produced results with "findings compatible with supraspinatus tendonitis with overlying subdeltoid bursitis."  Additional records, dated December 1, 1999, show results from a follow-up MRI confirming the previous MRI results and also suggesting "a partial thickness undersurface

tear in the distal anterior critical zone." Dr. Vastesaeger's September 13, 2001 medical report diagnoses Plaintiff with bursitis (a painful inflamation) of the shoulders, but notes that her shoulder pain responded temporarily to three separate cortisone injections she received. The physician also documented that Plaintiff's shoulder pain subsides in response to heating pads and Advil, which she takes up to six times a day.

Plaintiff's history of diabetes is referenced throughout the record. Dr. Vastesaeger's September 13, 2001 medical report indicates that Plaintiff's home glucose level ranges from 62 to above 300 (normal to high). However, the report also notes that she does not have any resultant vision problems, weight gain, urinary problems, or fainting. Additionally, she has never been hospitalized due to her diabetes.

In her medical report, Dr. Vastesaeger diagnoses Plaintiff with osteoarthritis of the right and left knees; however, the physician indicates that neither knee had visible swelling or palpable heat. Flexion was normal, but with pain. Plaintiff had a "normal gait and station without the use of a cane or crutches." The physician also diagnosed Plaintiff with peripheral neuropathy (nerve damage) of the feet and noted in the report a "decreased pinprick sensation to the sole of the right and left foot." Plaintiff stands with flat fleet and uses arches in her shoes for support. Dr. Vastesaeger also commented that Plaintiff had a history of vertigo, with residual imbalance, but that she had not suffered any falls.

Finally, Plaintiff visited the Wound Healing Center at Trinitas Hospital in Elizabeth, New Jersey in 2001, where she was treated for chronic ulcer of the left leg and for separate wounds on her left arm. Following debridement and compression of the edema, she was discharged in improved condition.

State Agency Physicians, Dr. Robert Carducci, M.D., and Dr. Gilette Burton, M.D., examined Plaintiff's medical records and, in their assessments, dated October 23, 2001 and November 28, 2001 respectively, they limited her to avoid exposure to extreme cold, extreme heat, wetness, humidity, fumes, dusts, odors, gases, poor ventilation, unlimited vibration, noise, and hazards. Additionally, they each limited her to occasionally lifting approximately twenty pounds, frequently lifting and carrying approximately ten pounds, standing and walking for about six hours in an eight hour workday, and sitting for six hours in an eight hour workday.

### 3. Plaintiff's Daily Activities

Plaintiff lives alone in an apartment complex. She testified that her daily activities include taking care of her cat, preparing her own meals with the help of her daughter, and watching television. Sometimes she babysits for her grandchildren. When she goes out of the house, she gets around by public transportation. Plaintiff testified that she is able to do some shopping with her daughter's help and she can take care of her housework if she does it "a little bit at a time." She has no problem sitting for long periods of time, but she gets tired if she stands for more than half an hour. Plaintiff gets out of breath after walking for two or three blocks and has to stop and rest. Additionally, she can lift and carry approximately ten pounds without pain in her chest.

## II. Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).  Some types of evidence will not be "substantial."  For example,

> '[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.'

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court, however, must review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  *Schonewolf v. Callahan*, 972 F.Supp. 277, 284 (D.N.J.1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)).  The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams*, 970 F.2d at 1183.

### A. The Five-Step Analysis for Determining Disability

A claimant's eligibility for DIB and SSI is governed by 42 U.S.C. §§ 423 and 1382. Under the Social Security Act ("Act"), a claimant is eligible for DIB and SSI if she meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, the disability period requirements of 42 U.S.C. § 416(i), and demonstrates that she is disabled on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A person is disabled for these purposes only if his physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the

onset of her alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). Given that the claimant bears the burden of establishing these first two requirements, her failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies her initial burdens, she must provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such showing, she is presumed to be disabled and is automatically entitled to disability benefits. *Id*. If she cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits. *Id*. Should the claimant be unable to return to her previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. *Yuckert*, 482 U.S. at 146-47 n. 5.

## B.  The Record Must Provide Objective Medical Evidence

Under the Act, a claimant is required to provide objective medical evidence in order to prove her disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the Secretary may require."); *see also* 42 U.S.C. § 1382c(a)(3)(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of sections . . . 423(d)(5) . . . shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").  Accordingly, a plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms.  She must provide medical findings that show that she has a medically determinable impairment.  *See* 42 U.S.C. § 423(d)(5)(A)*; see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .").

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made finding that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that

"subjective complaints of pain, without more, do not in themselves *constitute* disability").

## III. The ALJ's Decision

_____After reviewing the available evidence and considering Plaintiff's testimony, the ALJ concluded that Plaintiff was not disabled.

The ALJ determined that Plaintiff met step one of the analysis because she had not engaged in substantial gainful activity since the alleged onset of date of disability, November 3, 2000.  Further, the ALJ determined that Plaintiff met the requirements of step two of the analysis because the evidence established the existence of "severe" impairments under the Social Security regulations:  diabetes, coronary artery disease, tendonitis and bursitis in her left shoulder, and the residual effects of left carpal tunnel syndrome and surgery.  *See* 20 C.F.R. § 404.1520(b). Plaintiff does not dispute the ALJ's findings at steps one and two.

The ALJ concluded that Plaintiff did not meet the requirements of step three of the analysis because the evidence did not disclose any medical findings which met or equaled any of the impairments in the Listing of Impairments.  In so concluding, the ALJ did not directly identify any of the Listings in particular, but analyzed both the Plaintiff's subjective complaints of pain and the objective medical findings.  For example, the ALJ acknowledged that Plaintiff suffered from diabetes, but he noted that the objective medical evidence indicated that she did not suffer from end organ damage and her own testimony admitted that she was able to control her condition with diet.  The ALJ also addressed Plaintiff's history of coronary artery disease and her subsequent quadruple bypass surgery in 1999, but he added that her daily living activities indicated that she was able to "walk for two to three blocks; clean her house; visit her sister; and take public transportation alone" and, further, that she testified that she "pretty much" recovered

from her surgery.  The ALJ also considered Plaintiff's carpal tunnel syndrome.  The ALJ noted

Plaintiff's surgery on her left hand in 1999 and her complaints of residual numbness in that hand,

but also discussed her testimony regarding her ability to engage in daily activities and her

previous employment despite her condition.  The ALJ acknowledged Plaintiff's history of

shoulder pain, including the X-ray findings that demonstrated bursitis and tendonitis in her left

shoulder; however, he concluded that her shoulder pain could not have been as severe as alleged

based on other evidence which indicated that her pain was relieved without the use any pain

medication other than Advil, that she was able to lift and carry ten pounds, and that she was able

to perform her housework.  Finally, the ALJ noted that the evidence did not support her

allegation incapacitating pain in the knees.  He noted that X-rays showed only minimal

degenerative joint disease, and that there was no visible swelling or palpable heat, normal

flexion, and a normal gait and station without the use of a cane or crutches.

     The ALJ determined that Plaintiff's subjective complaints regarding her limitations were

not credible and could not reasonably be accepted.  The ALJ specifically noted that in

determining such credibility, he gave careful consideration to matters including:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain;
> (2) precipitating and aggravating factors (e.g. movement, activity, environmental
> conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain
> medication; (4) treatment, other than medication, for relief of pain; (5) functional
> restrictions; and (6) the claimant's daily activities and work record.

In addition, the ALJ noted that he "carefully considered all of the medical opinions in the record

regarding the severity of the claimant's impairments" while making this decision.  *See* 20 C.F.R.

§ 404.1527.  The ALJ reasoned that the medical evidence of record revealed objective findings

that could not reasonably produce the alleged complaints preventing light work, especially those

complaints regarding standing and walking.  He added that there was no evidence to demonstrate that Plaintiff was completely unable to perform work-related activities.

The ALJ then proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity permits her to resume her previous employment.  *See* 20 C.F.R. § 404.1520(e).  If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits.  *Id.*  A comparison between the claimant's residual functional capacity and the requirements of her past relevant work is necessary to satisfy step four.  *See* 20 C.F.R. § 404.1520(e)-(f); *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 120 (3d Cir. 2000).  In making the determination that Plaintiff was capable of returning to her previous employment, the ALJ found that, while Plaintiff had suffered from medically determinable "severe" impairments, and experienced some pain and limitation as a result of her impairments, the evidence established that she retained the residual functional capacity to perform light work.[3]  In particular, the ALJ found that Plaintiff retained the ability to perform such work as long as it did not require "fine manual dexterity with the left hand or involving exposure to concentrated pulmonary irritants."  Consequently, the ALJ determined that Plaintiff was able to return to her previous employment of an I.D. photographer for a college, as that employment was not precluded by her residual functional capacity.  Based on this conclusion, the ALJ did not reach step five of the analysis.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

Plaintiff now raises three arguments challenging the ALJ's decision at step four:

1. The Commissioner erred at step three of the evaluation process.
2. The Commissioner improperly found that Plaintiff retained the residual functional capacity to resume her previous employment.
3. The Commissioner erred in not proceeding to the fifth step of the sequential process.

The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.

## IV.  Legal Discussion

### A. ALJ's Step Three Analysis

Plaintiff asserts that the ALJ did not properly analyze her impairments under the third step of the sequential evaluation.  In particular, Plaintiff complains that the ALJ used boiler-plate language in finding that her impairments did not equal or meet any of the Listings in Appendix 1, Subpart P, Regulations No. 4 and, thus, fails the Third Circuit's *Burnett* standard.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).  While the ALJ failed to mention any particular listings by name, his review of the medical evidence meets the standards for step three of the sequential analysis and his conclusion is supported by substantial evidence.

An ALJ does not need to identify a particular listing in Appendix 1 that he or she uses as a comparison, nor does an ALJ need to make "specific factual comparisons with the criteria of those listings."  *Rivera v. Comm'r of Soc. Sec. Admin.*, 164 Fed. Appx. 260, 262 (3d Cir. 2006). "An ALJ is not required to use 'particular language or adhere to a particular format in conducting his analysis.'"  *Scatorchia v. Comm'r of Soc. Sec. Admin.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).  Thus, the mere failure to mention a particular listing by name is not fatal to the ALJ's analysis of Plaintiff's claims of

15

disability.

The essential attribute of a sufficient step three analysis is a reviewing court's ability to engage in a meaningful review of that finding.  *Burnett,* 220 F.3d at 120; *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  In fact, an ALJ is not required to expressly state why a claimant's condition does not meet a listing, as long as his reasoning is "discernible in his detailed analysis of her physical capacities."  *Kish v. Massanari*, No. Civ. A. 00-CV-1765, 2001 WL 1287459 *12 (E.D.Pa. Oct. 22, 2001).  Following his summary statement that the medical evidence failed to disclose any findings which met or equaled a Listing in Appendix 1, the ALJ engaged in the extensive evaluation and comparison of the physicians' objective medical findings and Plaintiff's subjective complaints of disability summarized at Part III above.  By way of example, in evaluating Plaintiff's diabetes, the ALJ considered objective medical evidence indicating that her condition did not lead to end organ damage and Plaintiff's own testimony noting that she was able to control her condition with diet.  Further, the ALJ evaluated the medical evidence regarding Plaintiff's shoulder condition, including X-ray findings that demonstrated bursitis and tendonitis in her left shoulder; however, he concluded that her shoulder pain could not have been as severe as alleged based on the evidence which indicated that her pain was relieved without the use any pain medication other than Advil, that she was able to lift and carry ten pounds, and that she was able to perform her housework.  Additionally, while the medical evidence documents a history of coronary artery disease, Plaintiff's testimony indicated that she had "pretty much" recovered from her surgery.  In engaging in such a review of the evidence, the ALJ demonstrated the thorough nature of his analysis at step three allowing for a meaningful review.

16

For the foregoing reasons, the ALJ's analysis at step three was proper.

**B. Plaintiff's Ability to Perform Light Work**

Plaintiff claims that the ALJ's finding that she could perform light work is not supported in the record; however, the ALJ's conclusion is supported by substantial evidence.

First, Plaintiff asserts that the ALJ's finding regarding her residual functional capacity was not supported by her treating physician. Specifically, she points to Dr. Straucher's advisement that Plaintiff take a five minute break every thirty minutes to rest her hand. Although the ALJ failed to place any particular weight on this evidence, the Court concludes that this omission was harmless error and, accordingly, does not warrant remand. *See Jones v. Barnhart*, No. 02-0791, 2003 WL 941722, at *12 (S.D.N.Y. March 7, 2003) (finding that the ALJ's failure to weigh physicians' opinions was harmless error because he discussed their findings and his decision does not conflict with such findings). Dr. Strauchler's instruction was given shortly after Plaintiff's carpal tunnel surgery in July 1999, which was more than a year before the date that Plaintiff alleged that she became disabled. Moreover, that same progress note encourages her to resume and continue her work-related activities. Furthermore, in the time between when this note was written in 1999 and the alleged disability onset date in late 2000, Plaintiff's own testimony reveals that she was capable of working full-time. Finally, an advisement to periodically rest her hand is not inconsistent with the determination of light work. *See* Footnote 3 *supra*. The physician's comments thus do not conflict with the ALJ's determination that Plaintiff could perform light work. Accordingly, the ALJ's failure to give this advisement weight is harmless error and does not warrant remand.

Second, Plaintiff claims that the ALJ erred in not explaining why he rejected some of Dr.

17

Burton's and Dr. Carducci's findings when determining her residual functional capacity.  In particular, Plaintiff asserts that the ALJ should have included the state agency physicians' postural and environmental limitations in his determination that Plaintiff was able to perform light work.  The state agency physicians' environmental limitations included avoiding concentrated exposure to (1) fumes, odors, dusts, gases, and poor ventilation, (2) extreme cold, (3) extreme heat, (4) wetness, and (5) humidity.  The state agency physicians' postural limitations included occasionally (1) climbing, (2) balancing, (3) stooping, (4) kneeling, (5) crouching, and (6) crawling.  The ALJ only expressly limited Plaintiff to avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  As an initial matter, despite Plaintiff's attempt to characterize this as the ALJ "rejecting" evidence, there is no indication he did so.  While the ALJ did not specifically reference certain of the state agency physicians' limitations in his decision, he explicitly noted that he "carefully considered all of the medical opinions in the record."  Further, the environmental and postural limitations found by the state agency physicians that are not referenced by the ALJ are not inconsistent with Plaintiff's ability to perform "light work"; therefore, such restrictions would not have been material to the result, and their omission does not warrant remand.  *See Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (stating that the Commissioner must explain his reasoning for rejecting *conflicting* evidence).  Moreover, the Court notes that Plaintiff never mentioned or argued that exposure to extreme heat, extreme cold, humidity, or wetness was a part of her previous employment as a college ID photographer, nor did she argue that her employment required the postural limitations noted in the state agency's report; thus, the ALJ was not required to include those restrictions in his determination that she could return to her previous employment.  *See Bowen v. Yuckert*, 482 U.S. 137, 146-47

18

n.5 (1987) (explaining that the claimant bears the burden of proof at the fourth step of the sequential process).

Finally, Plaintiff asserts that the ALJ's residual functional capacity determination was improper as he did not fully consider her subjective complaints of fatigue, dizziness, constant pain, troubled breathing, and poor balance. *See Burnett*, 220 F.3d at 122 (stating that the ALJ must consider and weigh all of non-medical testimony).  As discussed above, 20 C.F.R. § 404.1529(b) requires that the objective medical evidence demonstrate a basis for a plaintiff's subjective complaints.  Here, the ALJ engaged in an extensive comparison between Plaintiff's subjective complaints, and, as summarized above, Plaintiff's testimony and the objective medical findings of various physicians in the record, ultimately concluding that Plaintiff's subjective complaints were not credible.  In so doing, the ALJ pointed to Plaintiff's own testimony, which revealed in relevant part that she had "pretty much" recovered from her by-pass surgery; that she is able to walk for two to three blocks, clean her house, visit her sister, and take public transportation alone, prepare meals, take care of her cat; that her pain is relieved by an over-the-counter dosage of Advil; and that she had been able to work despite her hand condition.  Further, the ALJ pointed to objective medical evidence including that Plaintiff did not suffer from end organ damage relating to her diabetes and that, while X-rays showed minimal degenerative joint disease of the knees, there was no visible swelling or palpable heat and there was normal flexion and a normal gait and station without the use of a cane or crutches.  Moreover, the ALJ gave Plaintiff the benefit of the doubt concerning her complaint of troubled breathing by limiting her to avoid pulmonary irritants in his determination of her residual functional capacity.  Thus, the ALJ drew the reasonable conclusion that Plaintiff's complaints were less debilitating than she

19

alleged because they were not supported by the objective medical evidence or her daily living testimony.

In light of the foregoing, the Court concludes that the ALJ's analysis at step four is proper.

### C.  The ALJ's Findings on Plaintiff's Previous Employment

Plaintiff contends that the ALJ erred at step four of the analysis in determining that she was able to return to her previous employment.  However, substantial evidence supports the ALJ's conclusion.

Plaintiff argues that the ALJ did not make sufficient findings regarding her ability to perform her previous employment.  *See Burnett*, 220 F.3d at 120 (stating that the ALJ must make findings on the physical and mental demands of the claimant's past relevant work).  She asserts that the ALJ improperly characterized her job as a college ID photographer when she was, in fact, a secretary-photographer.  The ALJ's finding, however, was derived directly from Plaintiff's testimony during her hearing.  Specifically, Plaintiff testified that she was trained as a photographer by Montclair State College and that the main function she performed in that position was taking pictures.  Further, Plaintiff testified that her colleague performed all necessary typing on the computer and her only secretarial duties included "some filing."  Based on the Plaintiff's testimony, the ALJ's characterization of her previous employment was reasonable.

Further, objective medical evidence supports the ALJ's determination that Plaintiff is able to return to her previous employment.  Plaintiff's job as a secretary-photographer required her to be on her feet and also to lift and carry under ten pounds.  Dr. Strauchler noted that she should

return to her normal work activities and that her hand showed good range of motion.  Dr. Vastesaeger noted that Plaintiff experiences no numbness, minimal pain, and full use of her right hand.  The ALJ noted that the significant carpal tunnel surgery Plaintiff underwent was performed on her non-dominant hand.  With respect to Plaintiff's bursitis of the shoulders, Dr. Vastesaeger noted that her shoulder pain responds temporarily to three separate cortisone injections she received, and documented that the shoulder pain subsides in response to heating pads and Advil, which Plaintiff takes up to six times a day.  Additionally, while Plaintiff has a history of diabetes, Dr. Vastesaeger noted that she does not have any resultant vision problems, weight gain, urinary problems, or fainting.  Finally, the State Agency Physicians concluded that Plaintiff could occasionally lift approximately twenty pounds, frequently lift and carry approximately ten pounds, stand and walk for about six hours in an eight hour workday, and sit for six hours in an eight hour workday.  Further, while the State Agency Physicians limited Plaintiff's exposure to certain environmental conditions, there is no evidence that such limitations are inconsistent with Plaintiff's previous employment.

Accordingly, the Court finds that the ALJ's findings concerning Plaintiff's previous employment are supported by substantial evidence.

### D. Step Five Analysis

Plaintiff argues that the ALJ should have continued the sequential analysis into the fifth step and, then, based on the Grid Rule 201.12, determine that she was unable to perform any other work in the national economy.  As the ALJ did not err in steps three and four of the sequential analysis and his decision is supported by substantial evidence, it was unnecessary for him to continue in the sequential evaluation.

**IV. Conclusion**

      For the foregoing reasons, the Court concludes that substantial evidence supports the

ALJ's decision.  Accordingly, the Commissioner's final decision denying Plaintiff disability

benefits is affirmed.  An appropriate order accompanies this opinion.


Dated: August 16, 2006


                                                      s/ Joel A. Pisano
_____JOEL A. PISANO U.S.D.J.


Orig:  Clerk
cc:     All parties
         File